UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| MICHIGAN MILLERS MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case number 1:06cv0110 TCM |
| | ) | |
| DG&G COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This insurance dispute is again before the Court on an opposed motion of plaintiff, Michigan Millers Mutual Insurance Company ("Michigan Millers"), for summary judgment. [Doc. 63]

## Background

In an earlier ruling, the Court found that Michigan Millers had no duty to defend or indemnify defendant D G & G Company, Inc. ("DG&G") under its General Liability Policy or its Umbrella Liability Policy. The issue whether Michigan Millers had a duty to defend or indemnify DG&G under its Commercial Agribusiness Policy ("the Policy") was unresolved. Michigan Millers now moves for summary judgment on this remaining issue; specifically, whether the underlying loss, itself the subject of a separate lawsuit, is excluded from coverage under the Gin Stock Endorsement to the Policy or under the Agribusiness Property and Income Coverage Part of the Policy. Michigan Millers also argues that DG&G's voluntary payments to several parties violate the terms of the Policy. Although

conceding that there is no coverage under the Gin Stock Endorsement, DG&G vigorously disputes Michigan Millers' other arguments.

Included in the Agribusiness Property and Income Coverage Part of the Policy are a section titled "Perils Covered" and one titled "Perils Excluded." One paragraph defines the covered perils: "'We' cover risks of direct physical loss to covered property unless the loss is limited or caused by a peril that is excluded." (Compl. Ex. B3 at 16.) The second part of the "Perils Excluded" section is prefaced by the following sentence[1]: "'We' do not pay for loss or damage if one or more of the following exclusions apply to the loss." (Id. at 18.) In this second part are the two relevant exclusions: the "Contamination or Deterioration" exclusion and the "Defects, Errors, and Omissions" exclusion. The former reads as follows:

> "We" do not pay for loss caused by contamination or deterioration, including bin burn, corrosion, decay, fungus, mildew, mold, rot, rust; change in grade or condition; organic heating of grain, seed, or other agricultural product; or any quality, fault, or weakness in covered property that causes it to damage or destroy itself.
>
> "We" do cover any resulting loss caused by a "specified peril" or breakage of building glass.

(Id.) A "specified peril" is earlier defined in the Policy as "aircraft; civil commotion; explosion; falling objections; fire; hail; leakage from fire extinguishing equipment; lightning; riot; 'sinkhole collapse'; smoke; sonic boom; vandalism; vehicles; 'volcanic action'; water damage; weight of ice, snow, or sleet; and windstorm." (Compl. Ex. B2 at 16.) "Water

---

[1]The Court notes that, in its reply brief, Michigan Millers quotes the sentence that precedes the first part of the "Perils Excluded" section. The exclusions at issue, however, are in the second part.

damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam." (Id.)  In a separate provision limiting the coverage for fungi, wet rot, dry rot, or bacteria, a provision is added "which replaces any exclusion pertaining to continuous or repeated seepage or leakage of water; and supersedes any other exclusion, preclusion of coverage or exception to an exclusion pertaining to leakage or discharge of water or steam from a system or appliance." (Compl. Ex. B5 at 14.) The provision reads: "'We' do not pay for loss or damage caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more." (Id.)

The "Defects, Errors, and Omissions" exclusion reads, in relevant part:

"We" do not pay for loss which results from one or more of the following:

1) an act, error, or omission (negligent or not) relating to:

. . . .

    b) the design, specification, construction, workmanship, installation, or maintenance of property;

. . . .

whether on or off a "covered location";

. . . .

In addition, "we" do not pay for loss to personal property or stock caused by deficiencies or defects in design, development, specifications, materials, manufacturing, mixing, processing, testing, workmanship, or caused by latent or inherent defects.

- 3 -

"We" do cover any resulting loss unless the resulting loss itself is excluded. (Compl. Ex. B3 at 19.) "Personal property" includes that of others "that is in [DG&G's] care, custody, or control." (Compl. Ex B2 at 18.)

The property at issue is cotton that was ginned at DG&G in the Fall of 2005. (Pl. Ex. E at 2.) "DG&G never held legal title to the cotton." (Id. at 3.) Rather, the cotton was "owned either by the farmers/producers or persons or entities to whom the cotton had been sold." (Id.) In January 2006, DG&G learned that the cotton "was beginning to mold, discolor and harden while in storage" at a warehouse operated by Federal Compress & Warehouse Company, Inc. ("Federal Compress"). (DG&G Stip.[2] ¶ 61.) Three cotton merchants asserted claims against DG&G for damaged cotton they had purchased. (Id. ¶ 66.) DG&G informed Michigan Millers of these demands by letter dated January 25. (Id.) By letter of January 27, DG&G's counsel informed Michigan Millers that his client had redeemed some of the cotton before the deadline on January 26 by paying off loans totaling $3,419,428.34. (Pl. Ex. R, Att. (c).) As of the end of January, D&G's total expenditures in redeeming cotton, paying off loans, and settling claims were $6,354,173.48. (DG&G Ex. 6 at ¶ 12.) After reconditioning the cotton and then selling it, DG&G has paid $5,983,964.75 "to settle all claims relating to the cotton ginned at DG&G's gin during the 2005 ginning season." (Id. ¶¶ 13, 14.)

---

[2]"Stip." refers to a party's Uncontradicted Material Facts that are either admitted by the opposing party or are established by the evidence.

Asked in an interrogatory to identify and explain how the "'property damage'" occurred, DG&G replied that the claims it had settled were based on allegations that it had improperly ginned bales of cotton in the Fall of 2005. (Pl. Ex. E at 2.) DG&G, in turn, alleges that "other entities" caused or contributed to cause the "property damage." (Id.) DG&G then identified the following entities or individuals as being at least partially responsible for the damage: "Gene Lewis and/or Cotton Moisture"; Samuel Jackson; Vomax; L.P. Brown; "Lone Star and/or FlexSol and/or SpecPac"; and Federal Compress. (Id. at 2-3.) Specifically, Lewis or Cotton Moisture bear responsibility because of a moisture enhancement system sold to DG&G; Jackson and Vomax bear responsibility because of a device used to check the moisture content and enhancement of the bales; and the remaining entities were responsible because of their representations about the bags in which the baled cotton was placed. (Id. at 3.)

To support its claims against Lewis or Cotton Moisture, DG&G has submitted expert reports by Roy Childers, Jr., Louis F. Bouse, and Robert J. Collins. (Pl. Stip. ¶¶ 32-34.) Mr. Bouse avers that a broken solenoid valve in one of the nozzles in the Lewis Moisture System resulted in a spray pattern that caused moisture pockets in the cotton bales. (DG&G Ex. 12 ¶¶ 6-8.) He first examined the Lewis Moisture System in May 2006 and twice again in July 2006; he found a broken valve each time. (Id. ¶¶ 5, 8.) To support its claims against Jackson and Vomax, DG&G has submitted expert reports by Russell E. Marhefka and Alex J. Thomason. (Pl. Stip. ¶¶ 31, 35.) Michigan Millers' own expert, Gary Huitink, has given two opinions relative to the cause of the cotton loss or damage. (Pl. Ex. P at [27]-[28].) First,

the "[c]otton loss or damage was caused directly or indirectly by wetness or dampness applied to the cotton" and, second, "[t]he cotton loss or damage that occurred was caused directly or indirectly by wetness or dampness applied to the cotton during the ginning process at DG&G[.]" (Id. at [28].)

**Discussion**

The standards for review of summary judgment motions and of insurance contracts in Missouri were set forth in the Court's earlier memorandum and order and will be repeated here only as necessary for the discussion of the remaining issue: whether Michigan Millers has a duty to defend or indemnify DG&G under the Agribusiness Property and Income Coverage Part of its Policy for claims against it arising from the damaged cotton ginned by DG&G in the Fall of 2005.

The "Contamination or Deterioration" Exclusion. "Under Missouri law, the claimant has the burden to show that the policy covers the loss," **J.E. Jones Const. Co. v. Chubb & Sons, Inc.**, 486 F.3d 337, 340 (8th Cir. 2007); however, "'the insurer has the burden of proving that an insurance policy exclusion applies,'"**Am. Econ. Ins. Co. v. Jackson**, 476 F.3d 620, 623 (8th Cir. 2007) (quoting Am. Family Mut. Ins. Co. v. Co Fat Lee, 439 F.3d 436, 439 (8th Cir. 2006)) (alteration in original). "An exclusion relied upon to deny coverage must be clear and free from doubt." **Id.** (internal quotations omitted). Accord **Freeman v. State Farm Mut. Auto. Ins. Co.**, 436 F.3d 1033, 1035 (8th Cir. 2006). "If there is any ambiguity in the policy, it inures to the benefit of the insured, not the insurer."

**Machea Transport Co. v. Philadelphia Indem. Co.**, 463 F.3d 827, 832 (8th Cir. 2006). "Mere disagreement by the parties[, however,] regarding a contract term's interpretation does not render the term ambiguous." **Lindsay v. Safeco Ins. Co.**, 447 F.3d 615, 617 (8th Cir. 2006) (alteration added). Moreover, also under Missouri law, "where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable so long as one of the causes is covered by policy." **Capitol Indem. Corp. v. Haverfield**, 218 F.3d 872, 875 (8th Cir. 2000).

It is undisputed that the loss at issue was the result of damage to ginned cotton by excess water. When and how the water came to be added to the cotton is disputed. It is also undisputed, however, that any liability of DG&G is premised on the damage being done during its ginning process. DG&G attributes the excess water, if it did occur during DG&G's ginning process, to one of three causes: (1) a defect in a system designed to add a controlled amount of water to the cotton during the ginning process, (2) a defect in a system designed to accurately measure the moisture content of the baled cotton, and/or (3) bags that were not appropriate for baled cotton.

The "Contamination or Deterioration" provision excludes from coverage loss to property caused by, inter alia, "fungus, mildew, mold . . . change in grade or condition . . . ." The loss at issue clearly was caused by one of the listed occurrences. DG&G argues that the loss is nonetheless covered because it was caused by a "specified peril" – water damage.

"Missouri courts interpret insurance policies according to their plain meaning, giving words the meaning that would ordinarily be understood by a lay person who purchased the policy." **J.E. Jones Const. Co.**, 486 F.3d at 341. "[A] court should not search for an ambiguity where there is none." **Am. Econ. Ins. Co.**, 476 F.3d at 624 (alteration added) (internal quotations omitted). Additionally, "[t]he provisions of an insurance policy are read in the context of the policy as a whole." **Id.** (alteration added) (internal quotations omitted).

DG&G contends that the definition of "water damage" in the policy encompasses damage caused by water leaking from a broken valve in the Lewis Moisture System. (See DG&G Mem. at 18 ("It cannot be disputed that the Lewis Moisture System was a system containing water.")) A reading of the relevant provisions in the context of the Policy as a whole defeats this contention.

The Policy defines "water damage" as that caused by "leakage or discharge of water or steam from a system or appliance." (Compl. Ex. B2 at 16.) In another provision, the Policy excludes "loss or damage caused by or resulting from continuous or repeated seepage or leakage of water . . . ." (Compl. Ex. B5 at 14.) For purposes of the pending motion, it is assumed that the damage to the cotton may have been caused by water leaking from the Lewis Moisture System. The decision of the manufacturer to refer to its product as a "system" does not create an ambiguity in the Policy. A "system" is "[a] set or assemblage of things connected, associated, or interdependent, so as to form a complex unity; a whole composed of parts in orderly arrangement according to some scheme or plan . . . ." Oxford

English Dictionary, http://dictionary.oed.com/cgi/entry (last visited April 11, 2008).[3]  In the context of the underlying Policy, a layperson would interpret "system" to mean the set of pipes or conduits that deliver water throughout the building structures listed as insured on the Policy's schedule.  (See Compl. Ex. B1 at 19.)  The later reference to seepage or leakage reinforces this interpretation.  A layperson would not interpret "system" to refer to a discrete apparatus such as the Lewis mechanism.

"[C]onstruction or interpretation of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible [to] another construction which gives effect to all its provisions and is consistent with the general intent." **Murray v. Am. Family Mut. Ins. Co.**, 429 F.3d 757, 766 (8th Cir. 2005) (first alteration added) (internal quotations omitted).  DG&G's interpretation of the "water damage" provision would neutralize the other Policy provisions cited above.

"Defects, Errors and Omissions" Exclusion.  The Policy excludes from coverage loss caused by "an act, error, or omission (negligent or not) relating to . . . the design, specification, construction, workmanship, installation, or maintenance of property . . . ." (Compl. Ex. B3 at 19.)  Also excluded under this provision is "loss to personal property or stock caused by deficiencies or defects in design, development, specifications, materials,

---

[3]The Court may "turn[] to a commonly used dictionary to ascertain a word's ordinary meaning."  **Schumacher v. Cargill Meat Solutions Corp.**, 515 F.3d 867, 871 (8th Cir. 2008) (alteration added).

manufacturing, mixing, processing, testing, workmanship, or caused by latent or inherent defects."  (Id.)

Clearly, the loss at issue, if it is attributable at all to DG&G, was caused by a deficiency or defect in the materials or processing of the cotton.  See **J.E. Jones Const. Co.**, 486 F.3d at 340 (issue of whether incident at issue actually occurred was irrelevant to dispositive question of whether insurance policies covered incident, if it had indeed occurred). The cotton itself falls within the Policy's definition of personal property. "Processing" is defined as "to subject to a special process or treatment (as in the course of manufacture or film development)."  Merriam-Webster, http://www.merriam-webster.com/dictionary/processing (last visited April 11, 2008).  See also DG&G Mem. at 14 ("'[P]rocessing' means 'a series of actions or operations directed toward a particular result.'").  If the damage to the cotton was the result of a broken valve in the Lewis Moisture System or a defective reading from the Vomax system, the loss was caused by DG&G's processing.[4]  If the damage to the cotton was the result of the use of inappropriate bags, the loss was caused by a deficiency or defect in materials.  Thus, of the three causes listed by DG&G for the damaged cotton, each falls within the "Defects, Errors, and Omission" exclusion.[5]

---

[4] Whether DG&G may, in turn, hold others responsible for the loss is a question not at issue in this action.

[5] Because the Court finds no coverage, it declines to reach the issues of whether DG&G's payments were "voluntary" as defined by the Policy and, if so, whether they relieved Michigan Millers of its duty to pay.

**Conclusion**

The only remaining question is whether the loss at issue is covered under the Commercial Agribusiness Policy issued by Michigan Millers to DG&G. For the reasons set forth above, the loss falls within two exclusions: the "Contamination or Deterioration" exclusion and the "Defects, Errors, and Omissions" exclusion. The provision about "water damage" does not rescue the loss from either exclusion. Accordingly,

**IT IS HEREBY ORDERED** that the motion of Michigan Millers Mutual Insurance Company for summary judgment is **GRANTED**. [Doc. 63]

**IT IS FURTHER ORDERED** that the motion of Michigan Millers Mutual Insurance Company to dismiss D G & G Company, Inc.'s second amended counterclaim is **DENIED** as moot. [Doc. 89]

**IT IS FURTHER ORDERED** that this case is removed from the trial docket beginning May 19, 2008.

**IT IS FINALLY ORDERED** that Michigan Millers Mutual Insurance Company is to submit a proposed Judgment consistent with this Memorandum and Order within ten days of the date of this Order. D G & G Company, Inc., may file any objections to the proposed Judgment within five days of its filing.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of April, 2008.